## RODIEK v. HELVERING, Commissioner of Internal Revenue.

### No. 143.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

Reuben D. Silliman, of New York City (Sherwood E. Silliman, of New York City, of counsel), for petitioner.

Robert H. Jackson, Asst. Atty. Gen., Sewall Key and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for respondent.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This cause arises on an appeal, (petition to review), of an executor from an order of the Board of Tax Appeals which declared a deficiency in an estate tax, levied under section 301 (a) of the Revenue Act of 1926 (26 U.S.C.A. §§ 410, 460). The appellant is the ancillary executor of one Hackfeld, who died in Germany on August 27, 1932, a resident of that country, but a citizen of the United States. Many years before, on March 19, 1888, the eve of his marriage, Hackfeld had made in Bremen what we should call a marriage settlement, putting all his own property of every kind, present and future, into a "community" under the German law. According to the findings of the Board, which is all the record contains, this settlement gave to Hackfeld the management not only of the "community" property, but of his wife's separate property, (which was otherwise expressly excepted from the settlement); and she was to succeed him as manager of both estates upon his death. He reserved power to dispose by will of a half of the "community" estate, if there were no issue of the marriage, and the law gave him independently an unconditional testamentary power over his per capita share. Such a "community" gives to each spouse and to each child "a par-

ticipating undivided share"; it endures until the death of the longer liver of the spouses, or the remarriage of the widow, when it is dissolved and the property is "liquidated," by which we understand that it is distributed among the surviving children and any issue of those who have died. Neither spouse may dispose of his or her share during life, but either may exclude a "descendant" from the "community," save that in that case the excluded person may claim half of his intestate share from those who remain.

Hackfeld left a will, made a few days before his death, which assumed to affect the "community" property, his chief purpose, as he declared, being to relieve his wife—who was an invalid—of the cares of management which would otherwise devolve upon her. He appointed executors whom he charged with administering the property, not only during her life, but during that of his two daughters, both of whom had married; and he provided that if either died, the share of each of her "descendants," (Abkömmlingen), should continue to be administered until he or she became twenty-five years old. Then followed two sentences, the translation of which is as follows: "The ·respective heirs shall get the income of the estate as which I consider the existing joint property. Thereby my wife shall be relieved from the necessity of making contributions from her own income." The word, "heirs," (Erben), is here contrasted with "descendants," (Abkömmlingen), just used, and must include the daughters as well as their issue. The proper meaning of the two sentences is that the daughters or their issue shall have the whole income of the estate, "by which I mean the 'community' property, (Samtgut)," during the widow's life. The Board made no finding to the contrary but seems to have assumed in its opinion that the widow was still to enjoy her third of the income. It is impossible so to read the words, for the first sentence would then effect no change in the limitations until a daughter died, living the widow, an improbable event. The decedent could relieve his wife of contributing to the support of "Erben" only by giving them her share of the "community" property; he was certainly not thinking of his daughters' issue alone. The point is not indeed of capital importance, but it serves to confirm our conclusion, as will appear. The upshot of the whole will was that the

executors should manage the whole property during the life of the widow, and of the joint lives of the daughters thereafter; and that they should continue to do the same as to the separate interest of any surviving daughter throughout her life, and the lives of her issue until they reached twenty-five. To these provisions was added a power in the executors' discretion to convey the principal of his or her share to any "heir" (Erb). The share of one daughter was reduced because of an advancement, and the will concluded with some bequests, and a clause in terrorem, designed to compel the daughters' assent.

By the German law the widow had three courses at her election; to take "under statute", (by which we should understand the statute governing intestacies), under the settlement, or under the will. She "acquiesced" in the will and so did the daughters. The Commissioner ruled that all the property passed under the will, and was therefore subject to the estate tax. That is the chief controversy. A subsidiary question relates to ·a considerable amount of stocks and bonds which Hackfeld had lent to a cousin to pledge upon a loan. The cousin was insolvent when Hackfeld died, and the executors paid the note by discounting a note of their own, which they later paid out of the proceeds of the original collateral. The petitioner asserts that these securities should not be included in the estate, and the Commissioner ruled against him. The Board sustained both rulings.

As the Board well observed, the chief difficulty is in translating into American equivalents the concepts of another legal system—a difficulty not made less troublesome by the obscure translations. The word, "transfer," in section 301 (a) of the Revenue Act of 1926 (26 U.S.C.A. §§ 410, 460) need not include every legal change in the incidents of ownership; for example, had Hackfeld merely displaced his wife as manager of the "community" property and substituted his executors, we may assume that it would not have been a taxable event, though perhaps it might constitutionally have been made so. We are indeed accustomed to trusts in which management is joined with "title," under which we conceive of the property as "transferred"; but the same need not be true of a bare power to manage, even though irrevocable and authorizing purchases and sales. Cf. Helvering v. St. Louis Union

Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L. Ed. 29, 109 A.L.R. 1239. Hackfeld undertook to interfere much more than that with the rights and duties created by the marriage settlement. He extended the period of the daughters' tutelage beyond the death of their mother, when it would otherwise have ended, and put their issue under a similar disability. Again, he assumed immediately to divide the income among the daughters at the expense of his wife; and to create powers which would allow the principal to be taken out of the "community". at the executors' pleasure. If we were to try to find an American pattern for the limitations created by the settlement as they had stood at his death, it would be an estate in common of the wife and daughters during the wife's life, with vested remainders in the daughters, subject to a power in the wife to bequeath or devise her own per capita share. The will disturbed all these interests so substantially as to amount to a "transfer" of them, except the daughters' shares of the estate in common pur autre vie. Perhaps it would be theoretically proper to exempt these interests from the tax; their present values could be computed, and it is common practice to treat them as separate property. But the petitioner did not suggest anything of the kind before the Board or before us; and the record does not contain the facts necessary for the calculation. We dispose of the case as it was submitted without considering how far that course might have been necessary had the question been raised.

◼ We agree that the will was a legally operative factor in the "transfer," even though it required the "acquiescence" of the widow and the daughters to be effective. That might not have been true, had they had the power to change the limitations of the settlement at their pleasure. In that event it would have been possible to view the will as jurally neutral, as merely furnishing a content for the assents which they could incorporate by reference; its validity as a testamentary instrument would have been immaterial; the agreement would then have been the only operative legal transaction. The Board has indeed found that "the law of the community property was subject to modification by contract of the participants before or after marriage"; but although this language is not altogether plain to us, we do not read it as meaning that at any time

the "participating members of the community," as they are elsewhere described, might revoke the settlement and fix such new rights and duties as they chose. Certainly the power as described may fairly be limited to the two spouses before the birth of issue. Since the taxpayer must bear the risk of any ambiguities in the findings, it follows, in the words of the opinion below, that "the will was not without legal sanction." With the Board we treat it "as a valid exercise by Hackfeld of the power of testamentary disposition." It can be as much a "generating source" of the transfer, as though it had not required the assents for its validity; perhaps they were also "generating sources"; we know of no principle which demands but one. In any case it is enough that unless it had been a valid will, the assents would not have created the new limitations.

◼ The second question is whether the securities lent to the decedent's cousin and pledged by him were part of his gross estate; so the Board held, relying upon our decision in City Bank Farmers' Trust Co. v. Bowers, 68 F.(2d) 909. That case dealt with the Revenue Act of 1918 which provided—section 403 (a), 40 Stat. 1098— that "unpaid mortgages" might be deducted from the gross estate; a plain indication, we thought, that the mortgaged property itself was to be included. That inference was strengthened by section 403 (a) (1) of the Revenue Act of 1921 (42 Stat. 279), which expressly excluded mortgages on property situated without the United States. By section 805 of the Revenue Act of 1932 (26 U.S.C.A. § 412 (b) and note) this language was again changed, so that now the deduction is allowed only in case the mortgaged property was included in the gross estate; (apparently Congress thought that there might be property within the United States which would not be so included). Yet this last change could not have meant to declare that mortgaged property should normally be exempt; but exactly the opposite, though a fringe of uncertain exceptions was added, certainly not relevant here. The only difference between the case at bar and our earlier decision is therefore that here the decedent had not been the debtor. The section has always divided deductions into several classes. of which one is "claims against the estate," and the next "unpaid mortgages upon, or any indebtedness in respect to," the decedent's property. Debts of the decedent

are "claims against his estate," whether secured or not, and we must suppose that the second class covered something else; its most obvious application is to property which, when acquired by the decedent, is already burdened with another's debt; for example, equities bought without assuming the grantor's obligation. Ordinarily it will not indeed make any difference whether the full value of such property be charged against the executor, and the indebtedness credited; but in the case of a non-resident the distinction was important in 1932, as it still is in the case of a non-resident alien, because such a taxpayer is not allowed the full deductions of a resident, but only that proportion of them which his local assets bear to his whole estate. Section 303 (b) (1) of the Revenue Act of 1926, 44 Stat. 72, as amended by section 401 of the Revenue Act of 1928, 45 Stat. 862. We may assume arguendo that the petitioner might have deducted that proportion of what was due upon the securities, had he complied with section 303 (c) of the Revenue Act of 1926, 44 Stat. 72; but he did not, and the Board was right.

Order affirmed.