**UNITED STATES v. SILLIMAN.**

**Civ. No. 2568.**

District Court, D. New Jersey.

April 9, 1946.

Edgar H. Rossbach, U. S. Atty., and Roger M. Yancey, Asst. U. S. Atty., both of Newark, N. J., George A. McNulty, Chief, Alien Property Unit, Department of Justice, of Washington, D. C., Harry Le-Roy Jones, Sp. Asst. to Atty. Gen., and Frederick L. Smith, Atty., Department of Justice, of Washington, D. C., for the Government.

William H. Campbell, Jr., of Newark, N. J., for defendant.

MEANEY, District Judge.

This is an application for dismissal of the complaint and for summary judgment in favor of the defendant.

The complaint, seeking damages, demands judgment against the defendant in the amount of $910,376.77 by reason of an alleged fraud perpetrated by the defendant upon the Government of the United States.

In view of the complex factual situation involved herein, the court will undertake a review of the background of this action.

The defendant is an attorney at law, maintaining his professional office in the City of New York, and is a resident of the State of New Jersey.

In January, 1918, the Alien Property Custodian seized the property of one J. F. Hackfeld, located in the Territory of Hawaii and of a value of over $3,000,000, the seizure being predicated on a determination of the Alien Property Custodian that the said Hackfeld was an enemy as defined in Section 2 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 2.

Hackfeld was born in Germany, and in 1877 went to Hawaii. He there entered the sugar business, subsequently achieving considerable financial success.

In 1894 the Monarchy of Hawaii was overthrown. Hackfeld, having taken an active part in the overthrow of said Monarchy, was subsequently issued a certificate by the then Republic of Hawaii entitling him to all the privileges of citizenship of that Republic. In 1900, 31 Stat. 141, 48 U.S.C.A. § 491 et seq., the United States passed an Act organizing the Territory of Hawaii, which provided, inter alia, that all persons who were citizens of the Republic of Hawaii were thereafter declared to be citizens of the United States and of the Territory of Hawaii. Shortly thereafter, in 1901, Hackfeld returned to Germany for the asserted reason of his wife's ill health. From that date until 1914 Hackfeld divided his time between Germany and Hawaii. He was in Germany in 1914 and due, allegedly, to the outbreak of the war in that year, was unable to return to Hawaii or the United States. In January of 1918 the seizure of Hackfeld's holdings was made by the Alien Property Custodian.

In 1923, the said Hackfeld retained the defendant Silliman as his attorney, to represent him in proceedings before the Government departments, for the purpose of recovering from the plaintiff herein, the United States Government, the property which the Custodian had seized. In October of 1923 the defendant, on behalf of Hackfeld, filed a notice of claim with the Alien Property Custodian for the return to Hackfeld of all property held by the Custodian for the Hackfeld account. Hackfeld, thereafter, filed an application for an American passport in the American Consulate in Bremen, Germany, in which he alleged that he was a naturalized citizen and a legal resident of Honolulu, Hawaii. It appears that Hackfeld made his claim to citizenship upon the basis of the certificate issued to him by the Republic of Hawaii and the subsequent act organizing the Territory of Hawaii, whereby citizens of the Republic of Hawaii became American Citizens.

Defendant Silliman prepared and filed, on behalf of Hackfeld, various documents, statements and briefs relating to Hackfeld's claim to citizenship to further support his claim with the Alien Property Custodian, and made at least one trip to

Germany where he consulted Hackfeld in the preparation of the claim.

In April 1924, President Coolidge allowed Hackfeld's claim on the recommendation of the Attorney General. Pursuant to the allowance of the claim, the Alien Property Custodian returned to Hackfeld the sum of $3,867,229.86.

Hackfeld died in Germany in 1932 leaving a will which was probated in Germany, letters testamentary being given one, Rodiek, as ancillary executor, in the State of New York. The defendant was employed as counsel for the estate in America and was given a general power of attorney by the ancillary executor.

Subsequently, a bill was introduced in the Senate of the United States, for the payment to the estate of Hackfeld of an additional claim of $3,000,000 which amount it was alleged was further due as a result of injuries sustained by the estate through the sale of the Hackfeld properties by the Alien Property Custodian. That bill, by resolution of the Senate, was referred to the United States Court of Claims and on July 2, 1934, the said ancillary executor, Rodiek, with the defendant Silliman acting as his attorney, filed a sworn petition in support of the claim, with the said Court of Claims. Conclusions and an opinion were filed in 1943 by the said Court denying the claim.

During the pendency of the proceeding in the Court of Claims, the plaintiff in 1936 filed a civil action in the United States District Court for the Southern District of New York against the ancillary executor for the recovery of an alleged overpayment made to decedent, Hackfeld, in the amount of $881,298.38, alleging that the said overpayment had been made pursuant to the Presidential order of allowance, but under the erroneous and mistaken belief that Hackfeld was an American citizen.

After a trial of that action, the court directed a verdict in the amount of $1,605,057.32 on the ground that as a matter of law, Hackfeld had never been a citizen of the United States.

After judgment for the United States was entered on the directed verdict, application was made to the Surrogate's Court by the ancillary executor for leave to pay out of estate assets, fees and disbursements for attorneys. In addition, after filing his account in the Surrogate's Court, the ancillary executor made application to the court for authority to pay reasonable administration expenses. The application was granted. The defendant in this action was shown by the account to have received certain amounts from the estate as compensation for services rendered, and was listed as a creditor of the estate for additional sums as fees on account of such services.

The government, as a general creditor of the estate, filed its objections to the account, seeking a decree from the Surrogate's Court refusing the defendant herein unpaid compensation and seeking to surcharge him with the amounts of fees and disbursements theretofore received by him from the estate.

In 1942, meanwhile, the plaintiff filed its complaint in the instant proceeding charging the defendant with complicity in the filing and prosecution of the alleged false and fraudulent claim of Hackfeld. The amended complaint alleges that the defendant, knowing Hackfeld to be a German citizen and not an eligible claimant for the return of one hundred percent of his property, filed a claim representing Hackfeld to be a loyal American citizen, domiciled in Hawaii and eligible for a return of all property seized from him. Thirteen specific misrepresentations of material facts are charged. In addition, the defendant is charged with having bribed a vice-consul of the United States Bremen Consulate in order to get from him a favorable report and recommendation to the Secretary of State upon Hackfeld's claim to American citizenship.

The defendant has moved for an order dismissing the amended complaint and for the entry of a summary judgment in favor of the defendant on the pleadings and on affidavits annexed to the motion.

Defendant has asserted several grounds for his motion. The first ground urged is that there is an existing final judgment or decree in favor of the defendant and against this plaintiff entered in the Surrogate's Court of New York, In re Hackfeld's Estate, 171 Misc. 727, 13 N.Y.S.2d 685, on the same issues as are raised herein, rendered on the merits and determining the same cause of action, between the same parties, and that said judgment or decree is res adjudicata herein and determinative of the issues in this action.

A brief review of the proceedings in the Surrogate's Court will aid a determination of this asserted ground. It is evident from a review of the facts as hereinabove set

forth, that the United States, as a result of the verdict of the District Court in New York, was a judgment creditor of the Hackfeld estate, entitled to payment from the assets remaining after payment of expenses and allowances. Defendant Silliman had received from the executor, prior to the filing of his final account, over $48,000 for fees and disbursements, a portion of which were the result of disbursements made by Silliman in the preparation and presentation of the executor's claim for $3,000,000 filed against the United States.

Following the filing of the executor's final account, the United States filed objections to its allowance. The objections were in part directed to all payments and disbursements (past or proposed) in furtherance of the prosecution or in connection with the proceeding in the United States Court of Claims; and generally to all disbursements and payments of fees to Reuben D. Silliman, and requested a surcharge against him of all sums theretofore received by him from the estate on the grounds that he, as an attorney for Hackfeld, personally participated in the filing of false and fraudulent claims. The allegations contained in the objections and those set forth in the amended complaint are unquestionably grounded on the same alleged facts and evidence.

Despite this, it is the opinion of this Court that the defense of res adjudicata has no application in this proceeding and must be rejected. The fraud and misrepresentations alleged to have been perpetrated against the government by Silliman in 1923 and 1924 had no relation to the administration of the estate and were not matters within the jurisdiction of the Surrogate's Court to adjudicate. The doctrine of res adjudicata is applicable only where a judgment or a decree has been rendered by a Court of competent jurisdiction. Where it appears that a court lacked jurisdiction of the particular subject matter, a decree or judgment in respect thereto is ineffective as an estoppel. Bassick Mfg. Co. v. Larkin Automotive Parts, D.C., 23 F.2d 92; In re Wickwire Spencer Steel Co., D.C., 12 F.Supp. 528.

The fact that a court has incidentally determined a matter over which it would have no jurisdiction were the action brought directly does not cure the initial lack of power to make such determination.

Thus, section 71 of the Restatement of Judgments provides: "Where a court has incidentally determined a matter which it would have no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly."

The Surrogate's Court could not pass directly upon defendant's alleged fraud "in an action brought directly to determine it" and any incidental determination therein can have no conclusive effect upon an action brought directly in a federal court which has sole jurisdiction to determine the matter. Res adjudicata is not, therefore, a good defense to this suit. The mere fact of the assertion of objections by the Government, raising the issue of such fraud, in the Surrogate's Court does not serve to clothe the Surrogate with a jurisdiction he does not possess.

The question of the value of the services rendered the estate, and their nature, might very properly be considered in determining whether to make an allowance for such services; and in the event that an allowance were deemed justified, the general character and effectiveness of such services might enter into consideration of the amount of compensation to be granted. But in weighing these questions no jurisdiction is conferred to decide definitively matters which in essence must remain collateral to the issue involved in the allowance of fees. The question passed upon by the Surrogate was concerned with allowances, and for his guidance all circumstances surrounding the administration of the estate were to be considered by him. Such general survey of the overall picture, while a necessary prerequisite to competent decision as to appropriate compensation, would not warrant the conclusion that the Surrogate could judicially determine with all conclusiveness every factor influencing him in setting such fees as he might allow. The concerns which swayed him were not in the instant case, rights, questions or facts "distinctly put in issue, and directly determined by a court of competent jurisdiction." Southern Pacific R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 27, 42 L.Ed. 355.

In City of New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 913, 42 L.Ed. 202, the Court said: "The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when

the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded between the parties or their privies." Judged by this standard there does not appear to be such a conclusive judgment as to warrant the allegation that the fraud alleged by the Government on the part of the defendant Silliman has acquired the status of res adjudicata.

It may be well to keep in mind that the inclusive limits of the fraud charged by the government relate not only to improper conduct on the part of the defendant Silliman, in behalf of the estate as such, but also wrongdoing before the demise of Hackfeld.

The defendant's second ground is directed at the amended complaint and contends that it appears on the face of the amended complaint that the complaint does not state facts sufficient to constitute a cause of action or state a claim on which relief can be granted.

■■ In the opinion of the Court, the allegations of the amended complaint, necessarily admitted for the purposes of this motion, fully set forth the elements of fraud, and reliance thereon, and sufficiently state a cause of action on which relief could be granted. This the defendant admits, but makes the further assertion that the complaint contains additional allegations and assertions which completely refute the allegations of fraud and misrepresentations and destroy the efficacy of the complaint. In further support of this ground, defendant has filed affidavits and seeks to have this motion treated as one for a summary judgment as well as for dismissal.

■ The moving papers and affidavits filed herein indicate a substantial dispute of material fact. Such circumstance forecloses a summary judgment since all doubts as to the existence of a genuine issue as to material fact must be resolved against the party moving for a summary judgment. Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 130 F.2d 1016.

In seeking a dismissal, defendant contends that there was an independent investigation of the Hackfeld claim conducted by various governmental departments and agencies, thus precluding reliance by the government on the alleged fraud and misrepresentations of defendant Silliman.

■ The fact in itself that the government relied in part upon information gained through independent investigation does not suffice to deprive it of its right of redress.

■ While it is generally true that one cannot secure redress for fraud where acting on judgment derived from independent investigation or reports, and not on representations made, this does not follow where the fraudulent representation was a material inducement to action even though the injured party may have been influenced by information gained through independent investigation. This is the more true in a case of the type now presented, where the facts are peculiarly within the knowledge of the defendant and difficult for the plaintiff to ascertain. In Falter v. United States, 2 Cir., 23 F.2d 420, 424, the Court stated: " * * * cases do, indeed, contain general statements that, if the plaintiff has the means at hand by which he can check the fraud, he may not complain; but these are to be read in the light of the facts. When the parties do not have equal means of knowledge, it is immaterial that the victim, if more suspicious, could have discovered the cheat * * *."

Thus, while it appears that the United States did in fact conduct its own investigation of Hackfeld's claim to citizenship, it likewise appears that representations made by Hackfeld were relied upon to a great degree and were material in inducing the action taken.

Other contentions urged under this ground do not justify dismissal and are without merit. It may be noted, however, that defendant has urged under this point the conclusiveness of the presidential allowance. This is the same ground as defendant urges as his eighth ground and will be examined at a later point in this opinion.

Defendant's third and fourth grounds may be considered together. These are directed at the jurisdiction of the Court and at the authority of the government to maintain this suit.

This action is brought under section 24 (1) of the Judicial Code, as amended, 28 U.S.C.A. § 41(1) and section 17 of the Trading with the Enemy Act, as amended, 50 U.S.C.A.

Section 24(1) of the Judicial Code provides in part: "Original jurisdiction. The district courts shall have original jurisdiction as follows:

"(1) United States as plaintiff; civil suits at common law or in equity. First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue * * *."

Section 17 of the Trading with the Enemy Act confers jurisdiction upon the district courts to: "* * * make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act, * * *."

 This is a suit brought by the United States as a party plaintiff and is expressly within the jurisdiction conferred upon the district courts in the statutes above cited.

The defendant asserts further, however, that nowhere in the Trading with the Enemy Act is there found authorization in the United States to institute proceedings to review an allowance made under section 9 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 9, although provision is therein made for review by the claimant.

Examination of prior decisions has revealed no case in which suit was instituted under circumstances precisely like those here involved. In every case examined, the recipient of an allowance had reopened prior proceedings by seeking an additional allowance, and thereafter the government's action for recovery was upon a counterclaim, or by an independent suit against the claimant after application made for such additional allowance.

This fact, however, is not sufficient to foreclose any action by the government either to recover unlawful payments or damages for the fraud perpetrated upon it. It would present an anomalous situation indeed, if the United States found itself in a position where it was powerless to recover a fraudulently induced presidential allowance or to recover damages therefor until the defendant opened the door, by himself initiating the proceeding.

The question of the authority of the government to maintain an action to recover unlawful payments made under circumstances similar to those here involved, first arose in Cummings v. Societe Suisse, 66 App.D.C. 121, 85 F.2d 287, 289.

In that case the government's action arose by way of a counterclaim. Objection was made that, there being no express statutory authorization in the Alien Property Custodian in his own name to maintain an independent action, he could not therefore maintain suit by way of counterclaim.

That court, pointing out that that precise point appeared not to have arisen previously, reviewed briefly the provisions of the Act and stated: "* * * it seems to us wholly unwarranted to claim * * * that the United States are bound by their former action or that the President's finding * * * so forecloses the controversy that it is not now the subject of judicial review."

The Court then states at a further point: "It is going too far, therefore, to assert that, although the statute gives the Custodian complete power to seize and hold and administer the property, the mere fact that Congress has not specifically said that for its wrongful surrender, through an improvident order, he may sue for restitution in his own name, he is, therefore, without power or authority so to do. No statute is necessary to authorize the United States to sue in such a case, because the right arises out of the wrong done to them; * * *. When Congress gave to former owners the right to sue the Custodian, it necessarily implied power in the Custodian to defend, and it certainly did not mean so to circumscribe his rights as to leave him helpless to assert the fraud * * * either to defeat the claim or to recover back money which had been plundered from the trust."

In United States v. Rodiek, 2 Cir., 117 F.2d 588, 593, the Court had before it a similar question. The court based its determination upon the ground that the claimant had invited re-investigation, although in that case the claim for further allowance was in the Court of Claims and the government's action was an independent suit, the court stated: "In the Societe Suisse cases [Cummings v. Societe Suisse, supra, and Societe Suisse v. Cummings, infra] there was no express statutory authority for a counterclaim by the alien property custodian, and the language of the opinions is broad enough to justify an inference that the government could have brought an independent suit."

The present suit is a tort action for damages for fraudulently diverting property from the Alien Property Custodian. The right of the government to sue arises out of the wrong done to it and such right is not limited to suits for restitution only.

The government may proceed by independent suit to recover damages for any injuries it has suffered.

There is, however, a further angle to be considered. In the instant case, insofar as this defendant is concerned personally, there has not been a request for increase or modification of an initial allowance made to him, which request might "constitute an invitation to a reinvestigation". He was, however, attorney for the ancillary executor of the Hackfeld estate in the proceedings in the Court of Claims.

In the case of Cummings v. Societe Suisse, above cited, the court concluded that when the matter was opened at all, the United States had power "to re-examine all questions arising out of the original claim"; and in the Rodiek case, above cited, there is certainly justification for the contention that such proceedings as may be appropriate for the purpose of questioning the legality of the original grant and recovery of money fraudulently taken from the trust, might properly be initiated.

When the effort was made by the Hackfeld estate to get an increased sum, not only was the situation re-opened for the purpose of governmental suit against the estate, but also for the initiation of any proceeding whereby redress would be had for any wrong suffered as the result of the fraudulently procured amount. The fact that the defendant in this action was not the recipient of the money, nor the claimant of an additional sum, does not establish for him a bar to recovery from him of fraudulent gains, nor a bar against action on the part of the government to recover for losses due to his fraudulent acts, no matter who was the pecuniary beneficiary thereof.

The defendant Silliman, charged in the instant suit with fraud, was the attorney for Hackfeld at the time the original application was made and was also the attorney for the ancillary executor at the time application was made for increased allowance. Thus, he was an active participant in all germane proceedings and it would be absurd to assert he was granted an immunity covering his fraudulent actions which did not attach to the interest for which he acted.

As his fifth ground, defendant contends that the cause of action alleged against Silliman was merged into the judgment for plaintiff in the government's action in the New York District Court against Rodiek as ancillary executor of the Hackfeld estate. Defendant urges that, in failing to join Silliman as a party defendant in that action and in permitting judgment therein, based on the issue of mistake of law only on government's motion for a directed verdict, there was an election barring the present action based on fraud.

The defendant herein is charged with having joined with Hackfeld in perpetrating a fraud upon the government, thus charging Silliman as a joint tort feasor. The causes of action against them could have been asserted against either or both, jointly or severally. The fact that the government has already proceeded against Rodiek as ancillary executor of Hackfeld's estate, does not serve to bar further action against Silliman where there has not been full satisfaction on the judgment entered in the former action.

That joint tort feasors may be sued either jointly or severally and that judgment against one will not bar an action against the other was recently re-asserted in Hornstein v. Kramer Bros. Freight Lines, 3 Cir., 133 F.2d 143.

Moreover, Silliman as a resident of New Jersey was not and could not have been joined as a defendant in the New York District Court action. Acquiescence in the direction of a verdict on the grounds of mistake of law would not preclude a subsequent action against Silliman in this jurisdiction. Since Silliman is a joint tort feasor, it cannot be said that the government split its causes of action or made an election of remedies. Such remedies as the government had, were not mutually exclusive. Under such circumstances there was no election barring a second action. An action for restitution, based on mistake of law, does not foreclose a second action for damages based on fraudulent misrepresentations. Thus, even if the government in the Rodiek case acquiesced in the direction of a verdict on the grounds of mistake of law only, such action would not defeat its right to a cause of action for fraud against Silliman.

The defendant asserts as his sixth ground and reason, on his motion for dismissal, the contention that the alleged cause of action, if any, accrued in 1924 or prior thereto and not later than 1933, and is barred by the Statute of Limitations.

In support of this argument defendant urges that under Sec. 9(m) of the Trading

with the Enemy Act, the United States is only the nominal plaintiff, suing for the benefit of private persons, and therefore the rule that the statute of limitations will not bar an action by the United States does not apply.

This precise point has been decided adversely to defendant's contention. In Cummings v. Deutsche Bank, 300 U.S. 115, 120, 57 S.Ct. 359, 362, 81 L.Ed. 545, the Supreme Court stated in reference to enemy property seized under the Act: "The title acquired by the United States was absolute and unaffected by definition of duties or limitations upon the power of the Custodian or the Treasurer of the United States."

And further: "As the taking left in enemy owners no beneficial right to, or interest in, the property, the United States did not take or hold as trustee for their benefit."

In Societe Suisse v. Cummings, 69 App. D.C. 154, 99 F.2d 387, 395, (certiorari denied Societe Suisse v. Murphy, 306 U.S. 631, 59 S.Ct. 463, 83 L.Ed. 1033) the Court stated: "We think there is no basis for the claim of laches on the part of the government. No rule is better established than that the United States are not bound by limitations or barred by laches where they are asserting a public right. * * * Here the United States are not seeking the return of money unlawfully paid 'as a mere conduit of title for private persons', as counsel suggest. The property and money delivered to Swiss Corporation in 1921 was, in our opinion, enemy property, and it is settled that under the Trading with the Enemy Act enemy property after seizure belonged to the United States to be disposed of as they pleased * * *."

 Since the government acquired an absolute title, leaving in the enemy owners no beneficial right or interest, it cannot be said that the United States is not the "Real party in interest". The defense of the statute of limitations or of laches is not, therefore, available to this defendant.

The defendant urges, as a seventh ground for dismissal, that the Government did not rely on alleged misrepresentation of the defendant, but over a long period of time made its own investigation. This contention was similarly urged in support of the second ground and needs no further comment.

 Finally, the defendant as his eighth ground, contends that the president exercised discretionary powers in allowing Hackfeld's claim and that such determination is not open to surmise, re-examination, or collateral attack, but is final, conclusive and not reviewable by the courts.

The question of the conclusiveness of prior presidential allowances has been considered in several recent decisions. Cummings v. Societe Suisse, supra; Isenberg v. Biddle, 75 U.S.App.D.C. 100, 125 F.2d 741, and again in United States v. Rodiek, supra. It is to be noted that in each of these cited cases, the court ultimately based its determination that a presidential allowance might be re-opened on the ground that the claimant invited such re-examination when suit was filed for an increased allowance by the recipients. In so doing, however, the courts in each instance indicated that such re-examination by judicial review would not be foreclosed by any assumed conclusiveness even were there not a prior re-opening by the claimant himself.

In Cummings v. Societe Suisse, supra, the court expressed the view that it seemed wholly unwarranted to claim that the United States are bound by their former action or that the president's findings so foreclosed the controversy that it was no longer the subject of judicial review and stated further: "The government is never bound by the unlawful action of its officers; nor is it estopped by the acts of its agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit."

The same ground was urged in Swiss Nat. Ins. Co. v. Crowley, 78 U.S.App.D.C. 1, 136 F.2d 265. In that case the court reiterated and approved the portion of the opinion above quoted.

 In Isenberg v. Biddle, supra, the same argument was made and the court therein indicated its belief that a presidential finding is not so conclusive as to preclude subsequent challenge or correction in an independent action. Moreover, it is a well settled rule that administrative determinations in matters relating to payment of public funds are never final. Thus in Wisconsin Central R. Co. v. United States, 164 U.S. 190, 205, 17 S.Ct. 45, 50, 41 L.Ed. 399, the Supreme Court said: "* * * whatever the conclusiveness of executive acts, so far as executive departments are

concerned as a rule of administration, it has long been settled that the action of executive officers in matters of account and payment cannot be regarded as a conclusive determination, when brought in question in a court of justice."

It must be remembered as well in this case that Rodiek, as ancillary executor of the Hackfeld estate, prosecuted a claim in the Court of Claims seeking an additional allowance beyond that granted under the presidential determination, thereby in effect opening such determination to attack.

However, I do not find it essential that there be such a prior re-opening of an allowance. As stated above, in matters of account and payment, an executive determination cannot be regarded as conclusive when brought in question in a court of justice.

Where fraud is charged there is cogent reason to re-open the allowance and ample authority under which may be found the power to do so.

One point remains upon which brief comment should be made. Defendant asserted as a further ground in support of his motion, the argument that the plaintiff has received in satisfaction of its judgment against the ancillary executor, the defendant's joint tort feasor, an amount in excess of the claim for damages asserted against Silliman in this proceeding. This, it is urged, is satisfaction of the liability of all alleged joint tort feasors.

Defendant has made no argument in his supporting briefs in support of this ground. However, since comment was made thereon in the oral argument on this motion, it may not be assumed to be abandoned and will be commented on briefly.

The demand for damages herein is in the amount of $910,376.77. The amount of the judgment entered against Rodiek as ancillary executor of the Hackfeld estate was in the sum of $1,604,632.45. This judgment, plus interest thereon, however, amounted to the sum of $2,093,510.48. Of this total, there presently remains an unsatisfied total of $1,052,798.39, an amount exceeding the total amount sought in this suit. There has not, therefore, been either full or partial satisfaction sufficient to bar full recovery against this defendant.

Defendant's motion, in view of the conclusion above stated, must be denied.

The government has filed a counter motion to have the separate defenses stricken as insufficient in law under Rule 12(d), 28 U.S.C.A. following section 723c. Since defendant's separate defenses present the same questions of law as those in this motion, the motion to strike is allowed.