*Decision will be entered under Rule 50.*

LANSDALE STRUCTURAL STEEL & MACHINE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10997.   Promulgated June 30, 1950.

*Early L. Gilbert, C. P. A.*, for the petitioner.
*William H. Best, Jr., Esq.*, for the respondent.

OPINION.

LeMire, *Judge*: Respondent has determined deficiencies in petitioner's income, declared value excess profits, and excess profits taxes for the years 1941 to 1943, inclusive, as follows:

Income Tax

| Year | Deficiency |
|---|---|
| 1941 | $372. 01 |

Declared Value Excess Profits Tax

| 1942 | 23. 41 |
|---|---|

Excess Profits Tax

| 1942 | 2, 715. 33 |
|---|---|
| 1943 | 1, 330. 97 |

Some of the issues raised in the pleadings have been abandoned. The principal remaining issue is the amount to be included in petitioner's equity invested capital in respect of property transferred to it by its stockholders. By an amendment to the petition filed at the hearing petitioner alleged that respondent erred in failing to include certain postwar refund credits in equity invested capital.

The case was submitted on an agreed statement of facts and certain exhibits which were received in evidence without objection. We find the facts as set out in the written stipulation and the exhibits. For the purpose of this opinion the facts may be summarized as follows:

Petitioner is a corporation with its principal place of business located at Lansdale, Pennsylvania. Its returns for the years involved were filed with the collector of internal revenue for the first district of Pennsylvania.

Petitioner was organized November 3, 1933. At that time its organizers, Joseph Roberts and Norman P. Farrar, paid in to it $500 cash for all of its capital stock.

On November 8, 1933, Roberts and Farrar transferred to petitioner a steel fabricating plant located at Lansdale, Pennsylvania, consisting of land, buildings, railroad siding, machinery and equipment. This property had been purchased by Roberts and Farrar from the North Wales Building and Loan Association of North Wales, Pennsylvania, on October 2, 1933, for $18,000, plus prepaid taxes of $14.30 and prepaid insurance of $135.66. In purchasing the property Roberts and Farrar paid $2,500 cash and gave a note for $15,500, secured by a purchase money mortgage. Petitioner assumed the mortgage debt when

the property was transferred to it. There was no other consideration for the transfer, it being the intention of the parties that the property should constitute paid-in surplus.

At a meeting of petitioner's board of directors held November 8, 1933, a resolution was adopted reciting that petitioner accepted the property referred to above as "paid-in surplus" and assumed payment of the $15,500 purchase money mortgage thereon. Pursuant to the resolution the property was entered in petitioner's books at a total valuation of $30,002. The valuation ascribed to the different items as set up in petitioner's books and the actual cost thereof were as follows:

| Property | Value per Resolution | Actual Cost |
|---|---|---|
| Land | $3,000.00 | $1,799.88 |
| Buildings | 15,000.00 | 8,999.40 |
| Siding, machinery, tools and equipment | 12,000.00 | 7,199.52 |
| Office furniture | 1.00 | .60 |
| Truck | 1.00 | .60 |
| Totals | $30,002.00 | $18,000.00 |

For the purpose of computing depreciation on the property, the respondent allowed petitioner to use a cost basis of $18,000, less the $1,799.88 ascribed to the land.

In its excess profits tax returns for the years 1940 to 1944, inclusive, petitioner claimed and the respondent allowed the inclusion of the amount of the purchase money mortgage of $15,500 in borrowed invested capital. (The amount was adjusted in 1944 to $13,509.56 because of the payment of the mortgage on November 15, 1944.) Also in each of those years petitioner included in invested capital as paid-in surplus $18,149.96, representing the cost to Roberts and Farrar of the steel fabricating plant. Several smaller items, which are not here in controversy, were also included in invested capital, making the total equity invested capital claimed for each year as follows: 1940, $27,400; 1941, $28,352; 1942, $27,400; 1943, $32,352; and 1944, $34,233.97.

Respondent reduced invested capital for each year by $15,500, the amount of the purchase money mortgage which petitioner assumed in acquiring the plant. Petitioner contends that it is entitled to include the property in its equity invested capital as paid-in surplus under section 718 (a) (2) of the Internal Revenue Code, at its cost basis to Roberts and Farrar of $18,000, without any adjustment on account of the mortgage indebtedness which it assumed. It also claims, and respondent concedes, that it is entitled to include the mortgage debt in its borrowed invested capital for each year, under section 719.

Equity invested capital is defined in section 718 (a) (1) (2) as follows:

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. * * *

Petitioner argues that since the property under consideration was transferred to it as paid-in surplus, it must be included in invested capital at its basis for determining loss upon its sale; that the basis for determining gain or loss under section 113 (a) (8) of the Internal Revenue Code, on property acquired by a corporation as paid-in surplus after December 31, 1920, is "the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made"; and that since under section 112 (b) (5) there was no recognizable gain or loss on the transfer of the property to petitioner by Roberts and Farrar, the basis, and therefore the amount to be included in equity invested capital, is cost of the property to them, or $18,000.

Petitioner relies upon *Crane* v. *Commissioner*, 331 U. S. 1, as its authority for the contention that in determining the cost of the property to Roberts and Farrar no allowance can be made for the purchase money mortgage.

A casual reading of the statute might seem to require the construction contended for by the petitioner, notwithstanding that it leads to the unreasonable result of crediting an invested capital of $25,750 ($18,000 of equity invested capital and $7,750 of borrowed invested capital) on an actual money outlay by the stockholders of only $2,500. The fallacy of the reasoning lies, we think, in failing to give proper meaning to the term "paid in." That term, as used in reference to invested capital, means money or property turned over to or transferred to a corporation as its property, free and clear of any obligation, except as may be represented by capital stock. In *La Belle Iron Works* v. *United States*, 256 U. S. 377, the Court said:

In order to adhere to this restricted meaning and avoid exaggerated valuations, the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed or converted in exchange for shares of the capital stock, or actually acquired through the business activities of the corporation or partnership (involving again a conversion) and coming in *ab extra*, by way of increase over the original capital stock * * *. The provision of clause (3) [sec. 207, title 2, Revenue Act of 1917] that includes "paid in or earned surplus and undivided profits used or employed in the business" recognizes that in some cases contributions are received from stockholders in money or its equivalent for the specific purpose of creating an actual excess capital over and above the par value of the stock * * *

This concept of invested capital excludes borrowed money or property against which there is an offsetting obligation affecting the corporation's surplus.

What Roberts and Farrar actually paid in to petitioner was not the whole property, free and unencumbered, but only their interest, or equity, in it. The petitioner was itself a purchaser of the property to the extent that it assumed liability for the purchase money mortgage. No other view would coincide with the concept of invested capital as defined in *La Belle Iron Works, supra; Willcuts* v. *Milton Dairy Co.*, 275 U. S. 215, and other like cases. Property which a corporation purchases with its own credit and which it obligates itself to pay for with its earnings is not "paid in" within the true meaning of that term.

We think that respondent did not err in limiting petitioner's paid in equity invested capital to the cost of the property to Roberts and Farrar, less the amount of the purchase money mortgage which petitioner assumed.

By an amendment to its petition filed at the hearing, petitioner has raised a further issue pertaining to respondent's alleged disallowance of certain postwar refund credits.

Section 780 of the Internal Revenue Code, allows a credit, in the form of United States bonds to be purchased by the taxpayer, equal to 10 per cent of the excess profits tax for each year beginning after December 31, 1941, but not later than December 31, 1943. We held in *Altschul's, Inc.*, 9 T. C. 697, that such postwar refund credit for the year ended January 31, 1943, accrued in that year, as did the excess profits tax liability, the taxpayer keeping its books on an accrual basis, and therefore became a part of the taxpayer's accumulated earnings and profits for the succeeding year. Petitioner's amendment to its petition is said to be based on our ruling in that case.

The stipulated facts do not contain any reference to postwar refund credits, or any facts pertaining thereto, and petitioner has produced no evidence on this issue. The statements attached to the notice of deficiency show postwar refund credits (10 per cent of excess profits taxes) of $2,565.38 for 1942 and $711.13 for 1943. The invested capital schedules attached to the returns do not show the inclusion in invested capital of any accumulated earnings and profits for any of the years involved. We do not know, and have no means of ascertaining, what accumulated earnings and profits, or deficits therein, petitioner may have had at the beginning of any of the years before us.

On this state of the record, we are unable to make any independent determination on this issue and must therefore sustain the respondent.

Reviewed by the Court.

*Decision will be entered for the respondent.*