**Thomas STILWELL, Annabelle Stilwell, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 82–0900–CV–W–8.

United States District Court, W.D. Missouri, W.D.

March 5, 1984.

John H. Trader, Millin, Landman, Trader & Helmholz, Kansas City, Mo., for plaintiffs.

Robert G. Ulrich, U.S. Atty., Kansas City, Mo., Ludwig H. Adams, Trial Attorney, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

STEVENS, District Judge.

This is a taxpayer's refund suit under 28 U.S.C. § 1346(a)(1). The taxpayer, Thomas Stilwell, requested a refund of $29,426.77 together with interest. On March 29, 1982, after an audit determination, the Internal Revenue Services issued statutory notification of disallowance.

In 1973 the taxpayer had acquired 59.6 shares of Ketcham Oldsmobile, Inc. capital stock with a cost or basis of $60,000. In 1975 another 89.4 shares were acquired with a cost or basis of $105,000 for a total acquisition cost or basis of $165,000. The remainder of the 594 authorized and issued shares of stock were owned by Lloyd Ketcham.

In 1975, 1976, and 1977, Thomas Stilwell and Lloyd Ketcham, both of whom were shareholders of Lloyd Ketcham Oldsmobile, Inc., entered into agreements, each providing "that in the event of death or incapacity of Lloyd Ketcham that [sic] Thomas Stilwell will immediately make arrangements to buy the shares of Lloyd Ketcham Oldsmobile owned by Lloyd Ketcham; and that in the event of the death or incapacity of Thomas Stilwell that [sic] Lloyd Ketcham will immediately buy the shares of stock of Lloyd Ketcham Oldsmobile owned by Thomas Stilwell." Each annual contract fixed a value of the total shares of stock. The pertinent contract, that is the one in force when Ketcham acquired Stilwell's stock, dated August 15, 1977, valued the total of 594 shares of capital stock issued and outstanding at $1,700,000. Disagreement between the taxpayer and Ketcham culminated in the taxpayer selling all of his 149 shares to Ketcham for the sum of $307,027.31 and executing a general release to Lloyd Ketcham Oldsmobile, Inc. on April 5, 1978.

The taxpayer's 1978 individual tax return computed a long-term capital gain from the sale of the Ketcham Oldsmobile stock in the amount of $142,027.31 ($307,027.31 sales price less $165,000.00 basis). Subsequently, the taxpayer amended the 1978 return claiming a short-term loss from the stock transaction dated April 5, 1978, in the amount of $216,889. Such a deduction, if allowed, would have offset the previously reported capital gain from the sale of the stock. This action for refund followed the IRS's disallowance of the taxpayer's claim. Both parties have filed motions for summary judgment and memoranda in support thereof.

The question presented here is whether reciprocal contractual rights and obligations to purchase and sell stock of a corporation in the event of death or incapacity of parties to the contract constitute "other property" thereby establishing a separate

basis in the contract rights and obligations without first recognizing gain. However, because of the factual context in which the issue in this case arises, the court does not find it necessary to reach that question in its entirety.

26 U.S.C. § 1012 (all sections hereafter cited refer to Title 26 U.S.C. and the Treasury Regulations thereto) requires that the basis of property for income tax purposes shall be the cost of such property. Treasury Reg. § 1.1012–1(a) defines "cost" as the amount paid for such property in cash "or other property.' It is the permissible inclusion of "other property" in the cost basis which gives rise to this dispute.

Stilwell claims a separate basis in his stock on the basis of the 1977 stock contract because the contract is essentially equivalent to a demand promissory note or assumption of liability and therefore constitutes "other property" within the meaning of Treasury Reg. § 1.1012–1(a). According to the taxpayer, this separate basis is calculated to be $261,431, a figure which he makes by deducting the price paid ($165,000), from the price to be received from Ketcham of $426,431 under the August 15, 1977, contract. In other words, the taxpayer's basis calculation represents the gain or profit to be realized if he had died or become incapacitated while still owning the 149 shares of stock.

However, Stilwell did not submit any evidence that he recognized any gain on the basis of the 1977 stock contract and the court must assume that none was declared. That being the case, the court need not determine whether the 1977 stock contract is "other property" because with or without such characterization the refund should be denied. In order for this contract to be "other property," gain should have been realized upon receipt of it which in turn would have resulted in recognition of taxable gain in 1977 measured by the difference in the contract price (note or obligation received) and the taxpayer's basis:

$426,431 Value of Stilwell's stock [note/obligation received] per 1977 stock contract
less 165,000 Basis in stock
$261,431 Taxable gain

---

Treasury Reg. § 1.1001–1(c) provides that even though property is not sold or otherwise disposed of, gain is realized if the sum of all the amounts received exceeds basis and the gain is includable in gross income. Only after this gain is recognized is the taxpayer permitted to increase his basis for the amount of the gain. Upon the sale and release of the stock contract the taxpayer would experience a loss of $119,404 ($307,027 sale price less $426,431 basis). The net result of the two events is the same as that first reported by the taxpayer, a gain of $142,027:

$261,431 Taxable gain from receipt of stock contract
less 119,404 Loss upon sale of stock and stock contract
$142,027 Net gain from sale of stock and stock contract

---

If the stock contract is not "other property," there is no basis to calculate loss.[1]

In the case, plaintiff seeks to establish a tax loss because his future expec-

---

**1.** The government's position is that the taxpayer paid no money for the August 15, 1977, contract and that no obligations were fixed because the promise to pay a sum certain was contingent upon death or incapacity, and amount of stock then owned by Ketcham. The government contends that any basis in the contract is the fair market value of that contingent obligation but that the obligation has no ascertainable value and no basis upon which to realize a loss when the contract was cancelled. Additionally, the government contends that the taxpayer omitted from the calculation all gain realized in the amount of the released liability.

The government's position has not been addressed because the court need not determine whether the stock contract is "other property" or the value assigned thereto. The govern-

tation of gain from sale of stock upon his death or incapacity did not occur. However, recognition of tax loss must be connected with actual economic loss. *Crane v. C.I.R.*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). The claim should be denied because plaintiff's future expectation of profit was not actual economic loss. In substance, plaintiff voluntarily sold his stock for $307,037. He had a basis of $165,000. The gain of $142,027 was correctly reported in the first tax return filed by plaintiffs, and the IRS correctly denied plaintiff's request for refund because the substance of a transaction determines tax consequences. *C.I.R. v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945); *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

Accordingly, there is no genuine issue of material fact and summary judgment for the defendant is granted, each party to bear its own costs.

IT IS SO ORDERED.

ment's contention that the taxpayer omitted gain realized from release of liability supports the reasoning that gain or loss must be first recognized in order to establish a basis in the stock contract.