### In re John E. RYAN, Debtor.

### No. 98–18266–RGM.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

April 6, 2001.

Donald F. King, Fairfax, VA, for trustee.

Richard G. Hall, Annandale, VA, for debtor.

## MEMORANDUM OPINION

ROBERT G. MAYER, Bankruptcy Judge.

This case is before the court on the chapter 7 trustee's motion to sell residential rental real property and the debtor's competing offer. The trustee sought authority to sell the property to a third party for $370,000.00. The debtor objected, asserting that his offer of $50,000 would net the estate $5,000.00 more than the trustee's proposed sale. This case offers an insight into the manner in which a chapter 7 trustee computes the expected benefit to the estate from the sale of an asset and the manner in which a debtor must compute his bid in order to offer a greater benefit to the estate.

### The Trustee's Proposed Sale

The trustee listed the rental property for sale with a real estate agent who marketed the property, found a ready, willing and able purchaser, and submitted an offer to the trustee which the trustee accepted subject to court approval. The trustee mailed a notice to all creditors of his proposed sale. The trustee's notice of sale set out the essential terms of the sale:[1] (1) The sales price, $370,000.00; (2) The approximate payoff amount of the liens against the property, $260,000.00; (3) The real estate agent's sales commission of six percent of the sales price, $22,200.00; (4) The anticipated income tax consequences to the estate, approximately $20,000.00; (5) The debtor's exemption, a maximum of $5,000.00;[2] and (6) The trustee's estimated commission, $22,200.00. The net amount anticipated for distribution to creditors was $45,600.00.

### The Debtor's Offer

The debtor computed the net benefit to the estate from the trustee's proposal to be from $45,000.00 to $47,000.00. He offered $50,000.00, which he believed would result in a distribution to creditors of $5,000.00 more than the trustee's proposed sale. He also offered, if the trustee's purchaser increased his offer, to pay $5,000.00 more than the net benefit to creditors resulting from the increased offer. The trustee's purchaser did not increase his offer. The debtor had a cashier's check for $75,000.00 at the hearing.

### Evaluation of the Competing Offers

The debtor argued that his offer was $5,000.00 better than the trustee's proposal because the trustee's commission would be reduced and there would be no real estate commission or income tax. He agreed with the trustee's approximation of the payoff of the first trust and that he was not entitled to claim the property exempt. Each component will be examined.

#### 1. Real Estate Commission

■ The debtor properly notes that although the court authorized the trustee to employ a real estate agent, the agent's compensation is subject to further order of court. His theory is that a real estate agent knowingly undertakes the risk of an upset bid when accepting employment by a bankruptcy trustee. Consequently, if the debtor's bid is accepted, the agent would be paid nothing. He, therefore, did not

---

1. A copy of the proposed sales contract was attached to the notice.

2. The debtor's claim of exemption was disallowed and has been omitted from all calculations.

include any compensation for the real estate agent in calculating his offer.

While it is true that the compensation of professionals is subject to order of the bankruptcy court, generally upon completion of the duties of the professional, it does not follow that a court must automatically disallow all compensation to a professional who has fulfilled the terms of his contract when the trustee does not use the work product of the professional. Here, the real estate agent fulfilled the terms of her contract. Although the trustee would not use her work product if the debtor's bid is accepted, it does not follow that her efforts did not benefit the estate. Bankruptcy courts allow break up fees and related compensation for initial prospective purchasers in chapter 11 cases. The basic justification for break up fees is that the initial offeror provides a valuable service by establishing a minimum price for the assets to be sold and in creating a market for the assets. The real estate agent in this case accomplished the same result by bringing a ready, willing, and able buyer to the table. Before the real estate agent found a purchaser, the debtor had made no concrete offer to the trustee. He only got serious when the purchaser was found. The real estate agent in this case, having brought value to the estate by finding a ready, willing, and able buyer at a price of $370,000.00, is entitled to be compensated.

The value of the real estate agent's contribution is manifest from the proceedings in this case. The case was originally filed as a chapter 7 case by the debtor, *pro se,* on November 16, 1998.[3] Donald F. King

was appointed trustee. The debtor valued the real property in question at $278,000.00 on Schedule A, which he filed on November 30, 1998.[4] At that time, he estimated that the debt secured by the property was $250,845.00, suggesting that there was no value to be realized from the sale of the property. The chapter 7 trustee unsuccessfully sought information from the debtor concerning the value and the tax attributes of the property. The trustee was required to obtain a formal Rule 2004 order to take the examination of the debtor in order to obtain the information. The Rule 2004 order was entered on April 27, 1999. The debtor failed to comply with the Rule 2004 order. On October 28, 1999—almost a year after the petition was filed—an order was entered by the court directing the debtor to show cause why he should not be held in contempt for his failure to comply with the rule 2004 order and subpoena issued pursuant to it. The show cause hearing was initially set for November 23, 1999, but continued to December 21, 1999. On December 17, 1999, when his ability to further avoid providing the information to the trustee was shortly to come to an end and still without having provided the trustee the information he sought, the debtor converted the case to a proceeding under chapter 13.[5] Gerald M. O'Donnell was appointed chapter 13 trustee.

The debtor filed his initial chapter 13 plan on January 13, 2000, and an amended plan on February 1, 2000. The chapter 13 trustee objected to the amended plan. Confirmation was denied on March 21, 2000.[6] The debtor did not file a new plan

---

3. The debtor is an attorney licensed to practice in the Commonwealth of Virginia.

4. The valuation has never been amended.

5. A hearing on the show cause order was held on March 23, 2000, at which time the debtor was sanctioned.

6. Local Bankruptcy Rule 3015–2(C)(2) provides that a debtor's chapter 13 case will be dismissed by the clerk unless a modified chapter 13 plan or other action designated in the local rule is filed or taken within ten days after denial of confirmation. The automatic dismissal provisions of LBR 3015–2(C)(2) are

within 20 days as required by the order denying confirmation.[7] The clerk, therefore, issued a notice to show cause why the case should not be dismissed or re-converted back to chapter 7. The notice was issued on April 28, 2000, with a hearing set for June 6, 2000. At the debtor's request, and upon appearance of counsel for the debtor, the hearing was continued to July 18, 2000. On June 30, 2000, the debtor filed an amended chapter 13 plan which was met by objections from the chapter 13 trustee and a creditor. Confirmation of this plan was denied on September 6, 2000, and, on September 11, 2000, pursuant to the clerk's notice to show cause, the case was re-converted to a proceeding under chapter 7. Donald F. King was re-appointed chapter 7 trustee.

The debtor was unable to confirm a chapter 13 plan, none of which contemplated the sale of this investment property. During the nine months the case was in chapter 13, he collected the rent from the property but did not pay the mortgage. Only at the end of his chapter 13 case, when a foreclosure sale was imminent, did he make the post-petition mortgage payments.

In these circumstances, the real estate agent should be fully compensated for her efforts without regard to which contract is ultimately approved by the court. If it is sold to the trustee's purchaser, she is entitled to her commission pursuant to the listing agreement. If the debtor's offer is accepted, he must compensate her on the basis of the contract she obtained. It is clear that the debtor undertook a course of conduct to retain investment property so as to benefit himself and not his creditors. Without the agent's valuable and prompt services,[8] the debtor would still be seeking to stymie the trustee's attempts to liquidate this asset. This cannot be permitted. Nor may the debtor permit professionals to render valuable services to the estate and at the last moment seek to avoid paying them by making an offer that could have been made months, even years, earlier.[9] The full amount of the real estate agent's commission must be included in the debtor's bid in order for it to be competitive with the trustee's contract.

### 2. Income Taxes

The debtor has not taken into account the tax consequences of his proposed transaction. He properly notes, as did the chapter 7 trustee, that the estate would be responsible for income taxes if the property is sold to the trustee's purchaser. The trustee estimated that the tax consequence would be approximately $20,000.00. This is an estimated amount made in good faith by the trustee. Unfortunately, the trustee did not have full information to properly compute the taxes, and, in particular, did not have the debtor's tax basis in the property (information he first sought in

---

suspended by Local Bankruptcy Rule 1017–3 where the case has previously been converted from another chapter. LBR 3015–2(C)(2) assures cases are diligently prosecuted. LBR 1017–3 prevents debtors from manipulating the Local Bankruptcy Rules by having an automatic and unsupervised exit from bankruptcy.

7. The court extended the ten-day period in LBR 3015–2(C)(2) to twenty days at the request of the debtor.

8. The agent sold the property on the day the property was placed on the market.

9. The trustee served an application to employ the real estate agent on the debtor on February 1, 2001. The debtor objected to the application on February 14, 2001, asserting his intent to "pay the estate funds sufficient to redeem his equity in the properties." The debtor, however, had not made an offer to the trustee. The trustee was authorized to employ the real estate agent by order entered on February 27, 2001.

1998). At the hearing, the debtor proffered that he purchased the property in question in 1993 for $298,100.00.[10] He rented the property since 1994. He took a depreciation deduction of $10,800.00 in each year for 1994, 1995, and 1996 on his taxes and of $12,400.00 in each year for 1997, 1998, 1999, and 2000.[11] The total depreciation claimed is $82,000.00. Based on the debtor's proffer, the court concludes that a reasonable estimate of the adjusted basis of the real property is $216,100.00. The debtor and trustee agreed that the balance of the loan secured by the property is $260,000.00.

■ The debtor argues that no tax is due to the United States or the Commonwealth of Virginia if the trustee accepts his offer. He argues that he would pay the trustee $50,000.00 and the trustee would "abandon" the property to the debtor. An abandonment is not a taxable event. 26 U.S.C. § 1398(f)(2); *Terjen v. Santoro (In re Terjen)*, 154 B.R. 456, 458 (E.D.Va., 1993), *aff'd*, 30 F.3d 131 (4th Cir., 1994) (unpublished table decision); *Samore v. Olson (In re Olson)*, 930 F.2d 6, 8 (8th Cir., 1991). While the debtor is correct that an abandonment of property to the debtor does not constitute a taxable event to the estate, the real question is whether an abandonment in consideration of $50,000.00 is a sale or disposition as used

in 26 U.S.C. § 1001 or is a "transfer (other than by sale or exchange)" as provided in 26 U.S.C. 1398(f)(2).[12]

■ The determination is significant in many contexts, not just in this case. If the transaction is an abandonment, there is no taxable event. *Terjen*, 154 B.R. at 458; *Olson*, 930 F.2d at 8. If, however, the transaction is a sale or disposition, there is a taxable event. If the estate is the owner of the property when it is sold, the tax will be borne by the estate. *Erickson v. U.S. (In re Bentley)*, 916 F.2d 431, 432 (8th Cir., 1990). In *Erickson v. U.S.*, the trustee sold corn shortly after his appointment as trustee. Months later, the trustee determined the liens on the corn sold exceeded the proceeds from the sale. He, therefore, sought and obtained abandonment of the proceeds from the sale of the corn. The trustee asserted that because of the later abandonment, the estate was not liable for the tax on the gain from the earlier sale. The court of appeals held that the taxable event was the sale of the corn and that the estate was liable for the taxes arising from the sale. The later abandonment of the proceeds neither absolved the estate from the tax liability nor transferred the tax consequences of the sale to the debtors.

A bankruptcy court reached the same result in *In re McGowan*, 95 B.R. 104, 108

---

10. It is to be remembered that the debtor estimated the value of the real property at $278,000.00 on schedule A, which was filed on November 30, 1998. In general, housing values have not decreased since 1993. The value of a particular property depends on many factors and some properties did decrease in value in this time frame.

11. The debtor may well not be entitled to depreciate the property for the full calendar year 2000 since the case was converted to a proceeding under chapter 7 on September 11, 2000. From that date forward, the trustee would be entitled to the depreciation. For purposes of determining the capital gain on

this property, it does not matter when the depreciation was allowable, that is during the chapter 13 proceeding. A depreciation allowance reduces the basis.

12. Section 1398(f)(2) states: "In the case of a termination of the estate, a transfer (other than by sale or exchange) of an asset from the estate to the debtor shall not be treated as a disposition for purposes of any provision of [Title 26] assigning tax consequences to a disposition, and the debtor shall be treated as the estate would be treated with respect to such asset."

(Bankr.N.D.Iowa, 1988). In this case, the trustee abandoned farm equipment and machinery to the debtor which was later foreclosed upon by a secured creditor. The estate filed a tax return recognizing the abandonment as a taxable event. The trustee and the debtor took the position that the abandonment was a taxable event. *McGowan,* 95 B.R. at 105. The net result of this position would have been that neither the debtors nor the bankruptcy estate would pay the taxes, the former because they were not liable for the tax, and the latter because the estate was administratively insolvent. The taxing authorities filed notices of assessment against the estate and the trustee filed an application to determine the trustee's liability to the Internal Revenue Service and the State of Iowa. The Internal Revenue Service and the state reviewed the matter and concluded that the estate was not liable. They withdrew the assessments. The court held that an abandonment of bankruptcy estate property is not a sale or exchange which triggers tax liabilities chargeable to the estate and that the estate was not liable for any taxes. *Id.* at 108. It followed that the debtors were liable for the taxes.

While the debtor is correct in the fundamental principle that an abandonment is not a taxable event to the estate, it is necessary to determine for purposes of 26 U.S.C. §§ 1001 and 1398(f)(2) of the Internal Revenue Code, whether the debtor's proposal is a true abandonment or a disguised sale. Here, the debtor acknowledges that a tax liability would arise from the sale to the trustee's purchaser but asserts that no tax liability arises if he is the purchaser. The net result of both transactions is the same: the trustee receives money for the benefit of creditors and gives up an asset, that is, the real property. An abandonment is useful when there is property of the estate that has no value and is worthless to the estate. In

these circumstances, it is best for the trustee to abandon the property and avoid the costs of administration and other expenses and liabilities that might appertain to this estate's continued interest in the property. Consequently, when a property is abandoned, the trustee receives nothing in return, although he does avoid any possible liability that might arise in the future. The avoidance of liability, however, is not consideration for the abandonment. The abandonment is founded on the fundamental prospect that the property is worthless. *Terjen,* 154 B.R. at 458; *Olson,* 930 F.2d at 8; *McGowan,* 95 B.R. at 106. Here, the property is clearly of great value. It is worth $92,000.00 more than valued by the debtor in November 1998. This is inconsistent with the rationale of abandonment.

Moreover, if there were a pure abandonment of a worthless asset, how then is the second step of the debtor's proposed scheme—the payment of $50,000.00 to the trustee—to be explained? Is it a gift? Has some other asset been sold?

A transaction cannot be analyzed in independent steps. It must be looked at as a whole. As the Supreme Court stated in *Commissioner of Internal Revenue v. Court Holding Co.,* 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945) in rejecting the step transaction doctrine:

> The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant.

*Court Holding,* 324 U.S. at 334, 65 S.Ct. at 708.

■ When viewed as a whole, there is no doubt that a sale of a debtor's equity in property of the estate back to the debtor is a sale or exchange subject to taxation under the Internal Revenue Code and the laws of the Commonwealth of Virginia.

■ The debtor next seeks to minimize the tax due. The tax due is computed from the gain on a sale. The gain is the sales price less the costs of sale and the adjusted basis. Here, the debtor argues that his sales price is $50,000.00. Since the adjusted basis, $216,100.00, is greater than this, there is a net loss and, therefore, no tax due. The manner in which the gain is determined is statutorily set forth in 26 U.S.C. § 1001(a), which states: "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis." Section 1001(b) defines the amount realized as "the sum of any money received plus the fair market value of the property (other than money) received." The entire gain is recognized if the property has been sold or exchanged. 26 U.S.C. § 1001(c). The manner in which the amount realized is computed must take into account an encumbrance assumed or taken subject to by the purchaser, in this case, the debtor. 26 C.F.R. § 1.1001–2(a)(1). Examples are given in the Treasury Regulations. *See* 26 C.F.R. § 1.1001–2(c), Examples 1 and 2. The Supreme Court has addressed this issue in two cases. *See Commissioner of Internal Revenue v. Tufts*, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983); *Crane v. Commissioner of Internal Revenue*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947). *Tufts* dealt with a non-recourse obligation. *Crane* dealt with a recourse obligation. In *Tufts*, the Supreme Court stated: "When a taxpayer sells or disposes of property encumbered by a nonrecourse obligation, the Commissioner properly requires him to in-

clude among the assets realized the outstanding amount of the obligation. The fair market value of the property is irrelevant to this calculation." *Tufts*, 461 U.S. at 317, 103 S.Ct. at 1836. *See also 2925 Briarpark, Ltd. v. Commissioner of Internal Revenue*, 163 F.3d 313, 317 (5th Cir., 1999); *Yarbro v. Commissioner of Internal Revenue Service*, 737 F.2d 479, 484 (5th Cir., 1984).

In this case, the amount realized in the sale to the debtor is the cash offer of $50,000.00, plus the outstanding balance of the mortgage, $260,000.00, for a total of $310,000.00. The gain is the amount realized less the adjusted basis, or, $93,900.00. The debtor's offer must be increased to account for the taxes on this gain.

### 3. Trustee's Commission

■ The debtor included a trustee's commission in his calculations, but based it on his proposed sales price of $50,000.00. The trustee noted that the debtor's proposal would net the trustee a significantly lower trustee's fee than if the property were sold to the third party. If the property is sold to the third party, the trustee's commission would be based on $370,000.00. If it is sold to the debtor, the trustee's commission would be based on $50,000.00. In the first instance, the trustee's commission would be $21,750.00, in the second, $5,750.00. The trustee pointed out the tremendous effort that has gone into this case, all of which resulted from the debtor's failure to cooperate. This, he argues, should disqualify the debtor as a purchaser.

■ A trustee should sell property in a manner which reasonably anticipates the maximum benefit for creditors. The debtor's recalcitrance in this case does not necessarily disqualify him from being a prospective purchaser. It may, however, be a factor that the trustee may consider if it would have a bearing on the debtor's willingness or ability to timely complete a

proposed purchase. A sale must be made for the benefit of the estate, not the benefit of the trustee, and while the debtor has unnecessarily and unjustifiably increased the costs of the administration of this estate and delayed distribution to creditors, the trustee is still duty bound to disregard his own compensation and recommend a sale that is in the best interests of the estate. The trustee will be entitled to a commission and this must be taken into account in the debtor's offer.

Here, by providing for a commission of $5,750.00, the net available for unsecured creditors from the debtor's proposal after the trustee's commission would be $44,250.00, $1,350.00 less than the trustee's projected distribution to unsecured creditors from his proposed contract. The debtor's argument that his proposal is $5,000 .00 more than the trustee's is not accurate when the trustee's commission is deducted from the debtor's proposal.

### 4. Comparison of the Two Proposals

The debtor's offer of $50,000.00 nets to the unsecured creditors, after payment of administrative expenses, about $3,730.00.[13] The real estate agent should be paid her full commission of $22,200.00. The income tax consequences of the sale are about $18,320.00. The trustee's commission would be $5,750.00, leaving net funds to be distributed to creditors of $3,730.00.

The trustee's sale, on the other hand, results in net proceeds available for distri-

bution to creditors of about $27,145.00. The trustee's sale price is $370,000.00. The costs of sale include the real estate commission of $22,200.00; estimated closing costs of 2% of the amount of the sale or $7,400.00; the payoff of the lien of $260,000.00; income taxes of about $31,505.00; and a trustee's commission of $21,750.00. It is possible that the closing costs could be less than 2% and probably will be. This would inevitably increase the distribution of funds available to the unsecured creditors. Similarly, if the trustee were not to be awarded the maximum commission permitted under 11 U.S.C. § 326, there would be even more money available for unsecured creditors.[14]

If the debtor offered to pay the trustee an amount that was equal to $5,000.00 more than would otherwise go to unsecured creditors, that is to net about $32,145.00 to unsecured creditors, he would have to offer $96,450.00 to the trustee. The real estate commission of $22,200.00 would remain the same. The trustee's commission would increase to $8,072.50. The income taxes would be $34,032.50, which is actually higher than under the sale provided to the trustee's purchaser.[15]

### Conclusion

The debtor has incorrectly computed an equivalent value to the bankruptcy estate.

13. The court did not rely on the parties' estimates, but instead made computations from the facts presented.

14. There does not appear at this time any reason to believe that the commission by the trustee is not well earned in this case. Actual determination, however, must await submission of the final report.

15. The taxes in all instances were computed for both federal and state income taxes. For estimation purposes, the sale was treated as a long-term capital sale with a maximum tax rate of 28%. The actual amount due and the actual treatment can only be computed when the transaction is completed and all of the facts of the transaction are known. The tax consequences may, in fact, be more adverse to the estate. However, the same analysis would be applied to both the trustee's proposal and the debtor's proposal. The changes would be in the same direction and magnitude for both proposals and necessitate, in the facts of this case, a further increase in the debtor's proposal.

This is not an uncommon mistake by non-trustees. Trustees deal with the administration of estates on a regular basis and more readily appreciate the impact of administrative expenses and taxes on proposed transactions. They routinely compute the costs of a transaction, including the tax consequences, to estimate the net amount that will be distributed to creditors. The mistake the debtor made was to try to offer an amount equal to the trustee's net distribution to the creditors without realizing that the amount he pays to the trustee is also subject to administrative expenses and taxes. Once a trustee has determined a net amount that will likely be distributed to creditors, a debtor must gross this amount up so that after administrative expenses and taxes are deducted from his competing offer, the net amount will exceed the trustee's proposed transaction. The additional amounts will themselves further increase the trustee's commission and the tax consequences. Mathematically, the process is an iterative process best performed on a spreadsheet.

 The debtor cannot meet the offer of the trustee's buyer. The debtor would need to offer approximately $96,450.00 to have $5,000.00 more distributed to creditors than the trustee's purchase would effect. The debtor does not have this money. The debtor offered in his pleadings $50,000.00 to match the offer. He came to court with a cashier's check for $75,000.00. He stated that he could borrow from family and friends to come up with even more money. The court cannot accept this statement. This debtor has been recalcitrant. He has unjustifiably hindered and delayed the administration of this case. He has sought to manipulate it for his own benefit. He failed to make mortgage payments while he was in chapter 13 using, presumably, the funds for other necessary purposes. In these circumstances, particularly where the debtor has had more than two years to resolve this in a manner more favorable to himself, the court cannot give any credence to his statement that he could come up with an additional $21,450.00 in the time frame required. He has had his opportunity. There must be a day of reckoning and that day has come. The court finds that the debtor would need $96,450.00 to match the trustee's offer by more than $5,000.00 and that the debtor does not have the ability to come up with the funds and close within the same time period as the trustee's purchaser.[16] If the debtor were to be granted additional time to seek additional funds and were unable to do it, this particular sale would probably be lost. It is unknown how long it would take to resell the property or how much the additional costs to the estate would be to carry the property until it was resold. The property is on the verge of foreclosure. Relief from the stay has been granted.[17] The tenant is vacating. The trustee's cash flow will stop and he will have no ability to service the debt during a re-marketing period.

The debtor's objection to the trustee's sale will be overruled. His competing offer will be denied. The trustee's sale will be approved.

---

16. The contract provides that the settlement is to be no later than April 18, 2001.

17. In light of the significant change in equity values since the relief from stay was granted, the trustee has stated that he would seek modification of the relief previously granted.