JAMES L. DOYAL and COLLEEN N. DOYAL, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doyal v. Commissioner
Docket No. 609-77.
United States Tax Court
T.C. Memo 1978-307; 1978 Tax Ct. Memo LEXIS 207; 37 T.C.M. (CCH) 1279; T.C.M. (RIA) 78307; August 8, 1978, Filed James L. Doyal, pro se. Stewart C. Walz, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Lehman C. Aarons, pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and Rule 180 et seq. of this Court's Rules of Practice and Procedure. [1]
The Court agrees with and adopts the opinion of Special Trial Judge Aarons which is set forth below. OPINION OF SPECIAL TRIAL JUDGE AARONS, Special Trial Judge: Respondent determined a deficiency in petitioners' federal income tax for 1974 in the amount of $ 2767.08. Certain issues originally disputed in this case *209 have been settled by the parties. The only issues remaining before the Court are (1) the deductibility under section 165 [2] of two claimed casualty losses and (2) the amount of the basis under section 1012 of property sold by petitioners in 1974. As to the latter issue, petitioners claimed a capital loss on their return, which respondent disallowed. By an Amendment to Answer, filed with leave of the Court, respondent claims that a capital gain was realized, such claim being premised upon respondent's prior determination of cost basis.
FINDINGS OF FACT Some of the facts were stipulated. The stipulations of facts, including exhibits attached thereto, are incorporated herein by reference. Petitioners are husband and wife whose legal residence at the time of filing of this petition was Ogden, Utah. They filed a timely return for 1974. The adjustments remaining in dispute in this case all relate to real property, known as the Palomares property (hereinbelow referred to as "Palomares") located in Oakland, California and sold by petitioners in 1974. After the sale *210 of Palmoares had been negotiated (and after petitioners had vacated the premises) the purchaser noted the absence of a submersible electric water pump which had been attached to 80 feet of pipe. Petitioners concluded that the pump had been stolen and they accordingly made a $ 463 adjustment in the purchaser's favor at the closing of the sale. The pump was on the premises when petitioners bought Palomares, but no part of the purchase price paid by petitioners for Palomares was specifically allocated to the pump. The pump had not been used by petitioners, and the date of its original acquisition by petitioners' predecessor was unknown. The amount of the credit for the missing pump, granted in the 1974 sale, was the catalog price for a new pump (to which petitioners added estimated labor costs in their claimed theft loss deduction). Petitioners had been making payments in the amount of $ 175 per month on account of their mortgage liability under their own purchase of Palomares which had occurred nearly four years previously. These payments were made to Bank of America under a collection arrangement presumably made at the time petitioners acquired Palomares. Bank of America received *211 and negotiated petitioners' last $ 175 check, dated November 5, 1974. Petitioners apparently claim that the bank should not have negotiated that check, and that it should instead have gone into their 1974 sales escrow in which case petitioners would have an additional credit for $ 175. Petitioners' claimed theft loss consists of these two items, i.e., the pump and the $ 175 check. Petitioners closed their sale of the Palomares property on November 20, 1974. The parties agree on all figures involved in the Palomares sale excepting the amount of petitioners' cost basis. Respondent computes the gain on the sale as follows: Selling Price
$ 23,400.00
Less: Reduction for miss-
ing pump
463.00
Net Selling Price
$ 22,937.00
Selling Expenses: Commissions
$ 2,340.00
Fees & Expenses
3.50
25.85
15.00
3.00
$ 2,387.35
Net Selling Price
$ 20,549.65
Basis: Purchase price
$ 19,000.00
Title policy
205.00
Recording fees etc.
12.60
$ 19,217.60
Gain
$ 1,332.05
Less: Sec. 1202 deduction
666.03
Taxable gain
666.02
Petitioners' method of determining basis was to add to their original down payment on Palomares the aggregate amount *212 of their monthly amortization payments (of $ 175 per month), and to add the amount of the mortgage balance which remained outstanding at the time of the 1974 closing. The monthly amortization payments included interest and property taxes, and accordingly, the petitioners theorize that from the total basis determined under the method set forth in the preceding sentence there may be deducted the aggregate amount of tax benefits which petitioners received by virtue of the deduction of at least the interest payments, on their annual income tax returns. OPINION Casualty Losses. With respect to petitioners' claimed casualty losses, the burden rested upon petitioners to persuade the Court of the existence of a casualty and of the amount of the loss. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a) of this Court's Rules of Practice and Procedure. As to the pump, we need not speculate as to whether we may draw a reasonable inference from the record that an unproven theft actually occurred. See Jones v. Commissioner,24 T.C. 525, 527 (1955).Assuming that the alleged theft did occur, the record furnishes no basis for determining the amount *213 of the loss. As set forth in section 1.165-7(b)(1), Income Tax Regs., the amount of any casualty loss is the lesser of either: (i) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty; or (ii) The amount of the adjusted basis prescribed in § 1.1011-1 for determining the loss from the sale or other disposition of the property involved. This standard for determining the amount of loss from a casualty is the same as that which was sustained by the Supreme Court in Helvering v. Owens,305 U.S. 468 (1939). The tests for determining the amount of a theftloss are the same as above set forth, except that the fair market value of the stolen property immediately after the theft is considered to be zero. See Regs. § 1.165-8(c). There is nothing in the record which permits a determination of petitioners' cost basis for the pump or of the fair market value of the pump at the time it was found to be missing. The current catalog price does not reflect current value of a pump acquired at an undeterminable prior date. Nor has the Court any *214 basis for allocating to the pump a specific portion of petitioners' cost of Palomares. The proof required under the above regulations is totally lacking, and respondent's adjustment must be sustained. As to the $ 175 check, the record does not support any inference that a theft occurred. Whether or not the erroneous negotiating of petitioners' check constituted a theft must be determined by reference to California law (where the transaction occurred). Paine v. Commissioner,63 T.C. 736, 740 (1975). Section 484 of the California Penal Code (West's Annotated California Codes) sets forth the definition of "theft", both in general and with respect to various specific types of transactions. It is unnecessary for purposes of this Opinion to go beyond the threshold requirement under California law that, to constitute a theft, the perpetrator must have a felonious or fraudulent intent. There is no proof whatever in this case of any such intent. On the contrary, such understanding as the Court is able to glean from the meager facts is that, at most, Bank of America might conceivably have been negligent in the handling of the $ 175 check. If so, petitioners might have *215 had a civil cause of action against the bank. No facts in the record permit the Court to go beyond this and find the existence of a theft-loss. [3]
Basis of Palomares. This issue is purely a legal one. The parties are not in dispute as to the underlying facts. The question goes to the validity of petitioners' method of computing basis by adding to their down payment the aggregate of the amortization payments, and the amount of the mortgage balance remaining at the time of sale, and then deducting the amount of tax benefits petitioners received by deduction of the interest element which was included in the amortization payments. Petitioners' method is not only novel but also completely untenable. Petitioners' method *216 starts out with their equity in the property; follows with the build-up of that equity (on a net, after-tax-benefit theory); and ends with the addition of the closing mortgage balance.The landmark case on this subject is the United States Supreme Court decision in Crane v. Commissioner,331 U.S. 1 (1947). That decision put to rest any thought that basis can be determined under any amount-of-equity method, and established the principle that basis includes the amount of the mortgage assumed at the time of purchase, or (as in this case) the amount of the purchase money mortgage. As summarized in Mertens,Law of Federal Income Taxation (Vol. 3A, § 21.11): Under the approach of the Crane case, the basis for given property includes (a) an existing mortgage assumed by the buyer of the property, (b) an existing mortgage not assumed by the buyer, (c) a purchase money mortgage given by the buyer, and (d) tax and other liens existing on the property at the time of its acquisition, without regard to whether the liens were personally assumed. The principle enunciated in Crane is now so venerable as to be considered an elementary one in federal tax law. This Court, *217 of course, is bound by the principles evolved by the United States Supreme Court. And obviously, if in accordance with these principles, the full amount of the mortgage is included in basis as of the time petitioners acquired Palomares, such amount cannot be duplicated by adding to basis any portion of the monthly amortization payments. We must, accordingly, reject the alternative method of determining basis invented by petitioners, and sustain the adjustment as claimed in respondent's Amendment to Answer. To reflect the parties' agreement on other issues, Decision will be entered under Rule 155.
Footnotes
1. Pursuant to the Order of Assignment to the Special Trial Judge, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
2. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. On brief, petitioners argue that this was a "business loss". The bank, or possibly petitioners' buyer may owe petitioners $ 175, but at best the loss would have to qualify as a bad debt under section 166. Such loss, if any, has never been adjudicated and the debt, if any, has not been established as worthless in 1974. Cf. Schaff v. Commissioner,46 B.T.A. 640 (1942); Sandquist v. Commissioner,T.C. Memo 1978-281↩.